**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF DELAWARE**

| | |
|---|---|
| | : |
| In re | : Chapter 11 |
| | : |
| SWIFT ENERGY COMPANY, *et al.*,[1] | : Case No. 15-_____ (____) |
| | : |
| Debtors. | : (Joint Administration Requested) |
| | : |

**MOTION FOR AN ORDER AUTHORIZING THE DEBTORS TO PAY**
**PREPETITION EMPLOYEE WAGES, BENEFITS AND RELATED ITEMS**

The above-captioned debtors and debtors in possession (collectively, the

"Debtors") move the Court for the entry of interim and final orders pursuant to sections 105(a),

363, 507(a)(4), 507(a)(5), 541(b)(7) and 541(d) of the Bankruptcy Code (i) authorizing them to

pay:  (a) prepetition wages, salaries, overtime pay, bonuses, sick pay, vacation pay, payroll taxes

and other accrued compensation (collectively, the "Prepetition Compensation");

(b) unreimbursed or unpaid, as applicable, prepetition reimbursed employee expenses

(collectively, the "Prepetition Expenses"); (c) Prepetition Deductions (as such term is defined

below); (d) prepetition contributions to, and benefits under, employee benefit plans (collectively,

the "Prepetition Benefits"); (e) certain severance-related obligations, as described herein; (f) the

Supplemental Workforce Obligations (as defined below); and (g) all costs and expenses incident

to the foregoing payments and contributions, including related processing and administration

costs (the "Prepetition Processing Costs"), and (ii) granting certain related relief.  In support of

this motion, the Debtors respectfully represent as follows:

---

[1]     The Debtors are the following nine entities (the last four digits of their respective taxpayer identification numbers follow in parentheses):  Swift Energy Company (0661); Swift Energy International, Inc. (6721); Swift Energy Group, Inc. (8150); Swift Energy USA, Inc. (8212); Swift Energy Alaska, Inc. (6493); Swift Energy Operating, LLC (2961); GASRS LLC (4381); SWENCO-Western, LLC (0449); and Swift Energy Exploration Services, Inc. (2199).  The address of each of the Debtors is 17001 Northchase Drive, Suite 100, Houston, Texas 77060.

## Background

1.      On the date hereof (the "Petition Date"), each of the Debtors commenced a case by filing a voluntary petition for relief under chapter 11 of the Bankruptcy Code.[2]  The Debtors are continuing in possession of their properties and are managing their business, as debtors in possession, pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

2.      The Debtors are an independent energy company engaged in the exploration, development, production and acquisition of oil and natural gas properties.  The Debtors are headquartered in Houston, Texas.  Their primary assets and operations are focused in the Eagle Ford trend of South Texas and, to a lesser extent, the onshore and inland waters of Louisiana.  For the nine months ended September 30, 2015, the Debtors generated revenue of approximately $195.7 million from net oil and gas production of 8.8 million barrels of oil equivalents (MMBoe).  Crude oil represented 47% and natural gas represented 44% of the Debtors' oil and gas revenues for the nine months ended September 30, 2015 (22% and 66% of the volumes for crude oil and natural gas, respectively), with the remaining production and revenues coming from natural gas liquids (NGLs).

3.      Additional information regarding the Debtors and these cases, including the Debtors' business, corporate structure, financial condition, and the reasons for and objectives of these cases, is set forth in the Declaration of Dean E. Swick in Support of First Day Pleadings (the "First Day Declaration"), filed contemporaneously herewith and incorporated herein by reference.

---

[2]      This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue for this matter is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

***Prepetition Compensation and Prepetition Deductions***

4.      As of the Petition Date, the Debtors have approximately 228 full-time hourly and salaried employees.  Many of the employees are owed or have accrued various sums for Prepetition Compensation and Prepetition Deductions (as defined below).  These amounts were unpaid on the Petition Date because, among other things:  (a) the Debtors pay payroll and reimburse employees for business expenses in arrears; (b) checks previously issued on account of such obligations may not have been presented for payment or may not have cleared the banking system; (c) amounts related to prepetition services, while accrued in whole or in part, had not yet become due and payable by the Debtors; and (d) amounts deducted from employee paychecks were not then due to be paid over to the intended recipient or account, including deductions taken from employees' paychecks (i) to make payments on behalf of the employees for or with respect to, among other things, the Debtors' employee benefit programs, loan repayments and garnishments or amounts due to third parties and (ii) on account of various federal, state or local income, FICA, Medicare, state disability, workers' compensation and other taxes for remittance to the appropriate federal, state or local taxing authority (collectively, the "Prepetition Deductions").

5.      The Debtors' Prepetition Compensation includes compensation paid annually each February in the form of cash bonuses (the "Cash Bonus Plan") and a 401(k) match (the "401(k) Match").  The Debtors historically pay cash bonuses to employees based upon a combination of the employee's and the Debtors' performance over the prior calendar year.  All employees who are employed at the time the bonuses are paid are eligible to receive a bonus under the Cash Bonus Plan, and the majority of the Debtors' employees have typically received payments from the Cash Bonus Plan.  The Cash Bonus Plan program is an important component of an employee's overall compensation package, and the Debtors believe that many employees

expect to receive and rely on payments pursuant to the Cash Bonus Plan each February.  The Debtors seek to continue the Cash Bonus Plan for all employees, and the Debtors anticipate that payments under the Cash Bonus Plan, including the Debtors' payroll and related tax obligations, will not exceed $1,000,000.

6.     In addition to the Cash Bonus Plan, the Debtors also provide a lump sum 401(k) Match.  The Debtors match, on a 100% basis, up to 6% of qualified compensation or IRS compensation limits, employee contributions to the company-sponsored 401(k) retirement savings plan on a lump sum basis in February for the prior calendar year.  The Debtors seek to continue the 401(k) Match, and they anticipate that such payments will not exceed $1,500,000.[3]

7.     From time to time, the Debtors also reward non-insider employees through a spot bonus program.  Through this program, employees may receive small bonus payments based upon an employee's short-term performance.  Historically, payments under the spot bonus program have been less than $1,000 per employee and less than $30,000 in the aggregate per year.  The Debtors do not anticipate that any prepetition obligations will be outstanding under this program, but the Debtors intend to continue this program on a postpetition basis in the ordinary course of business.

8.     The Debtors also have approximately $1,000,000 of accrued but unpaid vacation obligations as of the Petition Date.  Employees may be eligible for payment of their accrued vacation in the event of a separation, and the Debtors intend to continue honoring their obligations to employees on account of accrued vacation in the ordinary course of business or in connection with the General Severance Program described in more detail below.

---

[3]     The Debtors only intend to make payments pursuant to the 401(k) Match and the Cash Bonus Plan upon entry of a final order.

9.      The Debtors seek authority to pay all Prepetition Compensation and Prepetition Deductions.  The Debtors estimate that, as of the Petition Date, the total amount of Prepetition Compensation is approximately $3,600,000[4] and the total amount of Prepetition Deductions is approximately $10,000.

***Prepetition Expenses***

10.      The Debtors customarily reimburse their employees for a variety of business expenses incurred in the ordinary course of their business, including travel expenses, membership dues, licensing fees, cell phones, club memberships and Education Expenses (as defined below).  Certain expenses may be paid directly by the employee and reimbursed upon review and approval by the Debtors.  Generally, the Debtors reimburse no more than $70,000 in business expenses on a monthly basis.

11.      The Debtors also reimburse tuition and related educational expenses for certain employees (the "Education Expenses").  Employees that comply with the relevant education policy receive reimbursement for some Education Expenses at the end of the applicable academic period, and employees often have incurred Education Expenses based upon the Debtors' agreement to provide reimbursements.  The Debtors estimate that they will owe approximately $41,000 in Education Expenses as of the Petition Date on account of tuition and related educational expenses incurred prior to the Petition Date.

12.      In addition, certain fuel purchase and vehicle service expenses are billed directly to the Debtors on account of a purchase card (the "P-Card"), which is administered by WEX Bank ("WEX").  The P-Card is primarily used by approved employees for fuel purchases

---

[4]      This estimate is comprised of $1,100,000 in unpaid salaries and wages including payroll and tax-related obligations, $1,500,000 for the 401(k) Match and $1,000,000 for the Cash Bonus Plan.  This amount does not include the Debtors' accrued but unpaid vacation liability, which the Debtors intend to honor in the ordinary course of business or in connection with the General Severance Program.

and vehicle services expenses in the Debtors' field operations.  The P-Card is critical to field operations and is an important benefit for the approved employees, as fuel and service expenses average $56,500 per month, and employees may be unable to pay for these expenses from their own funds and await reimbursement from the Debtors.  The Debtors estimate that they owe a maximum of $75,000 in prepetition obligations on the P-Card as of the Petition Date.  The Debtors are seeking authority to continue the use of the P-Card and pay any prepetition obligations associated therewith.

13.     The Debtors respectfully request authority to pay all Prepetition Expenses and Education Expenses and to continue utilizing the P-Card in the ordinary course of their business.  If the Debtors are not permitted to continue paying expenses incurred on the P-Card, many employees, as explained above, would be significantly prejudiced.  Moreover, discontinuing the use of the P-Card would significantly disrupt the Debtors' administrative procedures related to employee business expenses.  Finally, discontinuing the use of the P-Card would likely negatively impact employee morale by forcing employees to personally incur business-related expenses pending reimbursement.  Though it is difficult for the Debtors to determine the exact amount of Prepetition Expenses that are outstanding, because, among other things, employees may not submit reimbursement forms promptly, the Debtors estimate that their obligations for Prepetition Expenses as of the Petition Date will not exceed $256,000.[5]

***Prepetition Benefits***

14.     The Prepetition Benefits relate to the Debtors' employee benefit programs, including, for eligible employees:  (a) medical, dental, vision, prescription drug, accidental death and dismemberment, life and disability insurance; (b) flexible reimbursement plans and

---

[5]     This includes the estimated Education Expenses.

healthcare reimbursement accounts; and (c) a 401(k) retirement plan.  The Debtors' medical, dental, prescription drug and short-term disability plans are self-insured (the "Self-Insured Plans").[6]  Under the Self-Insured Plans, the Debtors assume liability for and initially pay certain benefits, rather than paying premiums for independent insurance coverage.  The Debtors' remaining plans are traditional insurance plans that are funded through premiums paid by the employees and the Debtors.  Blue Cross Blue Shield of Texas administers the Debtors' medical and dental plans, and the remaining plans are administered by Prime Therapeutics (prescription drug), VSP (vision) and Unum (life, disability, accidental death and dismemberment) (collectively with all applicable benefit plan administrators, the "Plan Administrators").  The Debtors seek authority to pay all Prepetition Benefits, and the Debtors estimate that, as of the Petition Date, the total amount of Prepetition Benefits is approximately $500,000.

*Severance Program*

15.     The Debtors have historically provided severance benefits for employees in the event of a reduction in force (the "General Severance Program") in exchange for a release from liability from the company.  The General Severance Program provides benefits based on years of service and was last utilized in January 2015.  Under the General Severance Program, employees whose job loss is attributable to a reduction in force have typically received (a) salary for each year of service, up to a maximum of twenty-six weeks of salary, in a lump sum payment, (b) unused accrued vacation, (c) payment of COBRA benefits and (d) certain job placement assistance.  The Debtors believe that it is important that the Debtors have the flexibility to maintain the General Severance Program for employee retention and morale.  By this motion, the Debtors seek authority to make payments under the General Severance Program to employees in

---

[6]     While the Debtors are self-insured, they do maintain stop loss insurance that provides protection to the extent that a claim exceeds $80,000.

an amount not to exceed that provided for in any debtor in possession financing, cash collateral or other budget.  Specifically with respect to the salary component portion of the General Severance Program, the Debtors seek authority to make such payments as salary continuation, not lump sum, capped at 13 weeks of salary.  The Debtors are not seeking, pursuant to this motion, authority to make any:  (a) postpetition severance payments not permitted under section 503(c) of the Bankruptcy Code; or (b) severance payments outside the General Severance Program to any individuals pursuant to a contract or offer letter.

16.     In addition to the General Severance Program, from time to time the Debtors may provide severance benefits to employees not related to a reduction in force.  These benefits are typically provided in exchange for a release from liability from the company.  The Debtors seek to continue providing such benefits in the ordinary course of business to employees, other than insiders, up to a maximum of $12,475 per individual on an interim basis.

*Supplemental Workforce*

17.     In addition to their regular workforce, the Debtors utilize the services of independent contractors pursuant to formal and informal arrangements (the "Independent Contractors").  Independent contractors include, for instance, consultants who provide engineering, information technology and consulting services that are vital to the efficient operation of the Debtors' business.  While the Debtors' need for Independent Contractors varies from time to time, as of the Petition Date, the Debtors are utilizing the services of two Independent Contractors.

18.     The Debtors also utilize the services of certain employment agencies (the "Agencies") in connection with providing or engaging a supplemental workforce (the "Supplemental Workforce" and each member thereof, a "Supplemental Worker").  The Supplemental Workforce provides a variety of services for the Debtors including accounting and

clerical services.  Though the Supplemental Workforce fluctuates to meet the Debtors' business needs, as of the Petition Date, the Supplemental Workforce consisted of approximately four individuals.

19.      The Debtors do not pay wages, withhold taxes or provide benefits for the Independent Contractors or Supplemental Workforce.  Instead, the Debtors make payments to (a) Independent Contractors based upon the relevant agreement and (b) Agencies generally based upon the number of hours worked by the Supplemental Workers.  The Agencies are responsible for paying the Supplemental Workers' wages and other amounts to which they are entitled.  The Debtors remit payments to most of the Agencies on a monthly basis.  As of the Petition Date, the Debtors estimate that approximately **$10,000** has accrued in respect of the prepetition services of Independent Contractors and the Supplemental Workforce (the "<u>Supplemental Workforce Obligations</u>").

***Costs and Expenses Incident to the Foregoing***

20.      The Prepetition Processing Costs include processing costs and accrued but unpaid prepetition charges for administration of the Prepetition Benefits, such as payments owed to the Plan Administrators, Charles Schwab Retirement Plan Services, which administers the Debtors' 401(k) retirement plan, ADP, LLC, which facilitates remission of the Debtors' payroll expense taxes and WEX, which administers the P-Card.  The Debtors estimate that the aggregate amount of Prepetition Processing Costs accrued but unpaid, as of the Petition Date, was no greater than $10,000.

<u>**Basis for Relief Requested**</u>

21.      The payment of the Prepetition Compensation, the Prepetition Expenses, the Prepetition Deductions, the Prepetition Benefits, the Supplemental Workforce Obligations and the Prepetition Processing Costs and the continuation of the General Severance Program is

warranted under sections 105(a), 363, 507(a)(4), 507(a)(5), 541(b)(7) and 541(d) of the

Bankruptcy Code and case law in this district and elsewhere.

***Employee Wages and Related Costs Are Entitled
To Priority Status under the Bankruptcy Code***

22.    Pursuant to section 507(a)(4) of the Bankruptcy Code, employees are

granted a priority claim for:

> allowed unsecured claims, but only to the extent of $12,475 for
> each individual or corporation, as the case may be, earned within
> 180 days before the date of the filing of the petition or the date of
> the cessation of the debtor's business, whichever occurs first,
> for —
>
> (A)    wages, salaries, or commissions, including vacation,
> severance, and sick leave pay earned by an individual.

11 U.S.C. § 507(a)(4).  Likewise, pursuant to section 507(a)(5) of the Bankruptcy Code,

employees are granted a priority claim for:

> allowed unsecured claims for contributions to an employee benefit
> plan —
>
> (A)    arising from services rendered within 180 days
> before the date of the filing of the petition or the date of the
> cessation of the debtor's business, whichever occurs first; but only
>
> (B)    for each such plan, to the extent of —
>
> (i)    the number of employees covered by each
> such plan multiplied by $12,475; less
>
> (ii)    the aggregate amount paid to such
> employees under paragraph (4) of this subsection, plus the
> aggregate amount paid by the estate on behalf of such
> employees to any other employee benefit plan.

11 U.S.C. § 507(a)(5).

23.    In addition, the costs of administering employee benefits programs are

also entitled to priority treatment under section 507(a)(5) of the Bankruptcy Code.  <u>Allegheny

Int'l, Inc. v. Metro. Life Ins. Co.</u>, 145 B.R. 820 (W.D. Pa. 1992).  In <u>Allegheny</u>, the court ruled

that the prepetition claims of a medical benefits plan administrator for, among other things, fees charged for performing administrative, actuarial and claims services in connection with the medical benefits plans of a chapter 11 debtor were entitled to priority under section 507(a)(5) of the Bankruptcy Code.  The court stated that "[i]t would be useless to prioritize expenses for contributions to an employee benefit plan and not prioritize the expenses necessary to administer those plans."  Id. at 822-23.

24.    The Debtors believe that the amount of prepetition wages, salaries and overtime pay will not exceed the sum of $12,475 per employee allowable as a priority claim under section 507(a)(4) of the Bankruptcy Code.  The Debtors are not seeking to make any payments to employees in excess of the priority cap in the near term, but it is possible that payments to employees could ultimately exceed the cap when the combination of accrued vacation and February payments under the 401(k) Match and the Cash Bonus Plan are included.  As previously discussed, the Debtors view the 401(k) Match and Cash Bonus Plan as critical components of  their employees' total compensation packages.  As described in more detail below, the Debtors' employees are essential to the continued operation and success of their business, and the failure to make payments under the 401(k) Match and Cash Bonus Plan will negatively impact morale and place undue hardship on employees that could ultimately result in the loss of employees during the critical restructuring period.

### *Funds Held in Trust Are Not Available for General Distribution to Creditors*

25.    Section 541(d) of the Bankruptcy Code provides that "property in which the debtor holds, as of the commencement of the case, only legal title and not an equitable interest" becomes property of a debtor's estate only to the extent of the debtor's legal title therein. 11 U.S.C. § 541(d).  It is well established in this District that "property a debtor holds in trust for another is not property of the estate" within the meaning of section 541 of the Bankruptcy Code.

See Golden v. The Guardian (In re Lenox Healthcare, Inc.), 343 B.R. 96, 100 (Bankr. D.

Del. 2006); see also In re Columbia Gas Sys., Inc., 997 F.2d 1039, 1059 (3d Cir. 1993)

(concluding that property that a debtor holds in trust — either express or constructive — for

another does not become property of the estate when the debtor files for bankruptcy and stating

that "Congress clearly intended the exclusion created by section 541(d) to include not only funds

held in express trust, but also funds held in constructive trust"); EBS Pension LLC v. Edison

Bros. Stores, Inc. (In re Edison Bros., Inc.), 243 B.R. 231 (Bankr. D. Del. 2000) (same).

26.     More specifically, it is well established under section 541(d) of the

Bankruptcy Code that taxes collected on behalf of taxing authorities are not property of the estate.

See Begier v. IRS, 496 U.S. 53, 59 (1990) (holding that taxes such as excise taxes, FICA taxes

and withholding taxes are property held by the debtor in trust for another and, as such, do not

constitute property of the estate); see also In re Calabrese, 689 F.3d 312, 321 (3d Cir. 2012)

(finding that third-party sales taxes collected by a retailer "resemble trust fund taxes" and "never

become property of the estate" but "are merely held by the debtor on behalf of the party that

owes the tax"); Old Republic Nat'l Title Ins. Co. v. Tyler (In re Dameron), 155 F.3d 718, 721

(4th Cir. 1998) (holding that deposits subject to an express trust are excluded from the

bankruptcy estate); City of Farrell v. Sharon Steel Corp. (In re Sharon Steel Corp.), 41 F.3d 92,

98-103 (3d Cir. 1994) (finding that funds withheld from employees' paychecks may be subject to

a trust, and thus are not property of a debtor's estate, even where such funds were commingled

with the debtor's other property).  Accordingly, such funds are not available for general

distribution to a debtor's creditors.

27.     Certain of the Prepetition Deductions are held in trust for the benefit of the

appropriate federal, state or local taxing authorities or for, among others, the Debtors' employees

themselves.  Thus, the Prepetition Deductions likely are not property of the Debtors' estates

within the meaning of section 541 of the Bankruptcy Code.  As a result, the remittance of the

Prepetition Deductions is warranted because it will not diminish creditor recoveries.

28.    Further, many federal, state and local taxing authorities impose personal

liability on the officers and directors of entities responsible for collecting taxes from employees

to the extent any such taxes are collected but not remitted.  Accordingly, if these amounts remain

unpaid, there is a risk that the Debtors' officers and directors may be subject to lawsuits on

account of any such nonpayment during the pendency of these chapter 11 cases.  Such lawsuits

would constitute a significant distraction for officers and directors at a time when they should be

focused on the Debtors' bankruptcy-related efforts.  To avoid the serious disruption of the

Debtors' bankruptcy-related efforts that could result from the nonpayment of any withholding

taxes, the Debtors seek authority to remit all Prepetition Deductions collected on behalf of the

employees to the applicable taxing authorities to the extent that they have not already been

remitted.

### Certain Prepetition Deductions and Contributions for ERISA Plans Are Not Property of the Estate

29.    In addition to the general exclusion of certain property from a debtor's

estate under section 541(d) of the Bankruptcy Code, section 541(b)(7) of the Bankruptcy Code

specifically provides that property of the estate does not include amounts withheld by an

employer from wages of an employee, or amounts received by an employer from employees, for

payment as contributions to an employee benefit plan that is subject to title I of the Employee

Retirement Income Security Act of 1974 ("ERISA").  Amounts withheld or collected from

employees on account of certain Prepetition Benefits, such as 401(k) accounts, medical, life,

disability and other insurance, or other benefits that are subject to title I of ERISA and thus

satisfy the standards of section 541(b)(7) of the Bankruptcy Code, are not property of the

Debtors' estates and are not available for distribution to the Debtors' creditors.  As such, the

remittance of amounts constituting Prepetition Benefits that do not constitute property of the

Debtors' estates will not adversely affect the Debtors' creditors.

***The Doctrine of Necessity Provides a Further Basis for Granting the Requested Relief***

30.     Section 363(b)(1) of the Bankruptcy Code provides:  "The trustee, after

notice and a hearing, may use, sell or lease, other than in the ordinary course of business,

property of the estate."  11 U.S.C. § 363(b)(1).  Section 105(a) of the Bankruptcy Code provides:

> The court may issue any order, process, or judgment that is
> necessary or appropriate to carry out the provisions of this title.
> No provision of this title providing for the raising of an issue by a
> party in interest shall be construed to preclude the court from, sua
> sponte, taking any action or making any determination necessary
> or appropriate to enforce or implement court orders or rules, or to
> prevent the abuse of process.

11 U.S.C. § 105(a).

31.     Courts have repeatedly recognized "the existence of the judicial power to

authorize a debtor . . . to pay prepetition claims where such payment is essential to the continued

operations of the debtor."  In re Ionosphere Clubs, Inc., 98 B.R. 174, 176 (Bankr. S.D.N.Y.

1989); see also In re Columbia Gas Sys., Inc., 171 B.R. 189, 191-92 (Bankr. D. Del. 1994)

(finding that a debtor is entitled to pay certain prepetition creditors upon a showing that the

payment is "essential to the continued operation of the business") (citations omitted).  The

United States Supreme Court first articulated the equitable common law principle commonly

referred to as the "doctrine of necessity" over 125 years ago in Miltenberger v. Logansport, C. &

S.W.R. Co., 106 U.S. 286, 1 S.Ct. 140, 27 L.Ed. 117 (1882).  "The Supreme Court, the Third

Circuit and the District of Delaware all recognize the court's power to authorize payment of

prepetition claims when such payment is necessary for the debtor's survival during chapter 11." In re Just for Feet, Inc., 242 B.R. 821, 825 (D. Del. 1999).

32.    Under the doctrine of necessity, a bankruptcy court may exercise its equitable power to authorize a debtor to pay prepetition claims, even though such payment is not explicitly authorized under the Bankruptcy Code.  See In re Columbia Gas Sys., Inc., 136 B.R. 930, 939 (Bankr. D. Del. 1992) (citing In re Lehigh & New England Ry. Co., 657 F.2d 570, 581 (3d Cir. 1981) (recognizing that "if payment of a prepetition claim 'is essential to the continued operation of [the debtor], payment may be authorized'")).

33.    The bankruptcy court's exercise of its authority under the "doctrine of necessity" is appropriate to carry out specific statutory provisions of chapter 11, specifically sections 1107(a), 1108 and 363(b)(1) of the Bankruptcy Code, which collectively authorize a debtor in possession to maintain and operate the debtor's business and use estate property outside of the ordinary course of business.  Indeed, a debtor in possession operating a business under section 1108 of the Bankruptcy Code has a duty to protect and preserve the value of its business, and prepetition claims may be paid if necessary to perform the debtor's duty.  See In re CoServ, LLC, 273 B.R. 487, 497 (Bankr. N.D. Tex. 2002) ("There are occasions when this duty can only be fulfilled by the preplan satisfaction of a prepetition claim.").

34.    This motion satisfies the foregoing criteria, as the relief sought herein plainly is essential to the continued operations of the Debtors.  Maintaining the goodwill of the Debtors' employees and ensuring the uninterrupted availability of their services will protect the going concern value of the estates and maximize the value ultimately available to creditors by (a) assisting the Debtors in maintaining the necessary "business as usual" atmosphere and (b) preserving the smooth operation of the business.

35.      Continuing the General Severance Program, as provided herein, is vital to maintain employee morale and goodwill and to avoid employee departures during this critical and sensitive time.  Without the continued support of their employees, the Debtors' efforts to maximize the value of their estates for the benefit of creditors and parties in interest will be severely hampered.

36.      It is likewise critical that the Debtors maintain the services of Independent Contractors and the Supplemental Workers who provide a variety of important services for the Debtors.  Any delay in payments to Independent Contractors or the Agencies could cause the Debtors to lose the benefit of necessary services, which would significantly disrupt and impair certain aspects of the Debtors' operations.

37.      Furthermore, any harm resulting from the Debtors' failure to obtain the relief requested herein would not be limited to the Debtors' estates.  Because the amounts represented by Prepetition Compensation and Prepetition Benefits are needed to enable the Debtors' employees to meet their own personal obligations, they would suffer undue hardship and, in many instances, serious financial difficulties if the relief requested herein is not granted.

38.      In light of the foregoing, the Debtors respectfully submit that the payment of the employee-related obligations as requested herein is (a) in the best interests of the Debtors, their estates and their creditors and (b) necessary to prevent immediate and irreparable harm to the Debtors, their estates and their creditors.

39.      This Court has routinely approved the payment of prepetition claims of employee wages, salaries, expenses and benefits in various chapter 11 cases.  See, e.g., Old FENM Inc., Case No. 13-12569 (KJC) (Bankr. D. Del. Oct. 23, 2013); In re MSD Performance, Inc., Case No. 13-12286 (PJW) (Bankr. D. Del. Oct. 1, 2013); In re OnCure Holdings, Inc.,

Case No. 13-11540 (KG) (Bankr. D. Del. Jun. 18, 2013); In re Geokinetics Inc., Case

No. 13-10472 (KJC) (Bankr. D. Del. Apr. 2, 2013); In re Ormet Corp., Case No. 13-10334

(MFW) (Bankr. D. Del. Feb. 27, 2013); In re AFA Inv. Inc., Case No. 12-11127 (MFW) (Bankr.

D. Del. Apr. 3, 2012); In re LCI Holding Co., Inc., Case No. 12-13319 (KG) (Bankr. D. Del. Mar.

15, 2012); In re Harry & David Holdings, Inc., Case No. 11-10884 (MFW) (Bankr. D. Del. Mar.

29, 2011).

***Request for Authority for Banks to Honor and Pay Checks Issued to Pay Prepetition***
***Compensation, Supplemental Workforce Obligations, Prepetition Expenses, Relocation***
***Obligations, Prepetition Deductions, Prepetition Benefits, and Prepetition Processing Costs***

40.      In addition, by this motion, the Debtors request that all applicable banks

and other financial institutions (collectively, the "Banks") be authorized, when requested by the

Debtors, to receive, process, honor and pay any and all checks presented for payment of, and to

honor all fund transfer requests made by the Debtors related to Prepetition Compensation,

Prepetition Expenses, Prepetition Benefits, Prepetition Deductions, Prepetition Processing Costs

and payments, if any, under the General Severance Program regardless of whether such checks

were presented or fund transfer requests were submitted prior to or after the Petition Date,

provided that sufficient funds are available in the applicable accounts to make the payments.

The Debtors represent that these checks are drawn on identifiable payroll and disbursement

accounts and can be readily identified as relating directly to the authorized payment of

Prepetition Compensation, Prepetition Expenses, Prepetition Benefits, Prepetition Deductions,

Prepetition Processing Costs and payments, if any, under the General Severance Program.

Accordingly, the Debtors believe that checks will not be honored inadvertently.

41.      Nothing contained herein is intended or shall be construed as:  (a) an

admission as to the validity of any claim against the Debtors; (b) a waiver of the Debtors' rights

to dispute any claim on any grounds; (c) a promise to pay any claim; (d) an implication or

admission that any particular claim against the Debtors would constitute a Supplemental

Workforce Obligation or a claim for Prepetition Compensation, Prepetition Expenses, Prepetition

Benefits, Prepetition Deductions, or Prepetition Processing Costs; or (e) the assumption of any

contract.

### Requests for Immediate Relief & Waiver of Stay

42.　　Pursuant to Rules 6003(b) and 6004(h) of the Federal Rules of Bankruptcy

Procedure (the "Bankruptcy Rules"), the Debtors seek (a) immediate entry of an order granting

the relief sought herein and (b) a waiver of any stay of the effectiveness of such an order.

Bankruptcy Rule 6003(b) provides, in relevant part, that "[e]xcept to the extent that relief is

necessary to avoid immediate and irreparable harm, the court shall not, within 21 days after the

filing of the petition, issue an order granting . . . a motion to pay all or part of a claim that arose

before the filing of the petition."  Accordingly, where the failure to grant any such requested

relief would result in immediate and irreparable harm to the Debtors' estates, the Court may

allow the Debtors to pay all or part of a claim that arose before the Petition Date prior to the

twenty-first day following the Petition Date.  Bankruptcy Rule 6004(h) provides that "[a]n order

authorizing the use, sale, or lease of property other than cash collateral is stayed until the

expiration of 14 days after entry of the order, unless the court orders otherwise."

43.　　As set forth above, the payment of the Prepetition Compensation,

Prepetition Expenses, Prepetition Benefits, Prepetition Deductions, Prepetition Processing Costs

are necessary to prevent immediate and irreparable damage to the Debtors' (a) operations (and

customer confidence therein) and (b) ability to successfully reorganize.  Accordingly, the

Debtors submit that ample cause exists to justify (a) the immediate entry of an order granting the

relief sought herein and (b) a waiver of the fourteen-day stay imposed by Bankruptcy

Rule 6004(h), to the extent that it applies.

## **Consent to Jurisdiction**

44.     Pursuant to Rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), the Debtors consent to the entry of a final judgment or order with respect to this motion if it is determined that the Court would lack Article III jurisdiction to enter such final order or judgment absent consent of the parties.

## **Notice**

45.     Notice of this motion will be provided to:  (a) the Office of the United States Trustee for the District of Delaware; (b) the Debtors' largest unsecured creditors on a consolidated basis, as identified in their chapter 11 petitions; (c) Kirkland & Ellis LLP, as counsel to the ad hoc committee of a majority of holders of the Debtors' prepetition unsecured notes; (d) counsel to JP Morgan Chase Bank, N.A., in its capacity as administrative agent for the senior secured lenders; (e) counsel to the trustee under the respective prepetition indentures governing the unsecured notes; (f) the Banks; (g) counsel to Cantor Fitzgerald Securities LLC in its capacity as administrative agent under the proposed debtor in possession financing; and (h) all parties entitled to notice pursuant to Local Rule 9013-1(m).  As this motion is seeking "first day" relief, this motion and any order entered hereon will be served in accordance with Local Rule 9013-1(m).  Due to the nature of the relief requested herein, the Debtors respectfully submit that no further notice of this motion is necessary.

## **No Prior Request**

46.     No prior request for the relief sought herein has been made to this Court or any other court.

[The remainder of this page is intentionally blank.]

WHEREFORE, the Debtors respectfully request that the Court enter an interim order substantially in the form attached hereto as <u>Exhibit A</u>, and a final order granting:  (i)  the relief requested herein; and (ii) such other and further relief to the Debtors as the Court may deem proper.

Dated: December 31, 2015
   Wilmington, Delaware

Respectfully submitted,

/s/ Zachary I. Shapiro
Daniel J. DeFranceschi (DE 2732)
Zachary I. Shapiro (DE 5103)
Brendan J. Schlauch (DE 6115)
RICHARDS, LAYTON & FINGER, P.A.
One Rodney Square
920 North King Street
Wilmington, Delaware 19801
Telephone:  (302) 651-7700
Facsimile:  (302) 651-7701

-and-

Gregory M. Gordon (TX 08435300)
JONES DAY
2727 N. Harwood Street
Dallas, Texas  75201
Telephone:  (214) 220-3939
Facsimile:  (214) 969-5100

Thomas A. Howley (TX 24010115)
Paul M. Green (TX 24059854)
JONES DAY
717 Texas, Suite 3300
Houston, Texas 77002
Telephone:  (832) 239-3939
Facsimile:  (832) 239-3600

PROPOSED ATTORNEYS FOR DEBTORS
AND DEBTORS IN POSSESSION

**<u>EXHIBIT A</u>**

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| In re | : | Chapter 11 |
|  | : |  |
| SWIFT ENERGY COMPANY, *et al.*,[1] | : | Case No. 15-_____ (____) |
|  | : |  |
| Debtors. | : | (Jointly Administered) |

## INTERIM ORDER AUTHORIZING THE DEBTORS TO PAY
## PREPETITION EMPLOYEE WAGES, BENEFITS AND RELATED ITEMS

This matter coming before the Court on the Motion For An Order Authorizing the Debtors to Pay Prepetition Employee Wages, Benefits And Related Items (the "Motion");[2] the Court having reviewed the Motion and the First Day Declaration and having considered the statements of counsel and the evidence adduced with respect to the Motion at a hearing before the Court (the "Hearing"); the Court having found that (i) the Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334, (ii) venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409, (iii) this is a core proceeding pursuant to 28 U.S.C. § 157(b), (iv) notice of the Motion and the Hearing was sufficient under the circumstances and (v) there is good cause to waive the fourteen-day stay imposed by Bankruptcy Rule 6004(h) to the extent it is applicable; and after due deliberation the Court having determined that the relief requested in the Motion is (i) in the best interests of the Debtors, their estates and their creditors and (ii) necessary to prevent immediate and irreparable harm to the Debtors, their estates and their employees; and good and sufficient cause having been shown;

---

[1]     The Debtors are the following nine entities (the last four digits of their respective taxpayer identification numbers follow in parentheses):  Swift Energy Company (0661); Swift Energy International, Inc. (6721); Swift Energy Group, Inc. (8150); Swift Energy USA, Inc. (8212); Swift Energy Alaska, Inc. (6493); Swift Energy Operating, LLC (2961); GASRS LLC (4381); SWENCO-Western, LLC (0449); and Swift Energy Exploration Services, Inc. (2199).  The address of each of the Debtors is 17001 Northchase Drive, Suite 100, Houston, Texas 77060.

[2]     Capitalized terms not otherwise defined herein shall have the meanings given to them in the Motion.

IT IS HEREBY ORDERED THAT:

1.      The Motion is GRANTED.

2.      On _____, 2016, at _____ ____.m. (ET), a hearing will be held before this Court to consider the relief sought in the Motion on a final basis.  All objections, if any, to the Motion shall be in writing and filed with this Court and served on counsel for the Debtors, any duly appointed committee, and the Office of the United States Trustee for the District of Delaware, so as to be received on or before _____, 2016 at 4:00 p.m. (ET).

3.      The Debtors are authorized, in the Debtors' sole discretion, to pay the Prepetition Compensation, Prepetition Deductions, Prepetition Benefits and Prepetition Processing Costs that were accrued and unpaid as of the Petition Date; provided, however, that the Debtors will only be authorized to make payments under the 401(k) Match and the Cash Bonus Plan upon the entry of a final order.

4.      The Debtors are authorized, in the Debtors' sole discretion, to pay the Prepetition Expenses, including amounts incurred under the P- Card, that were accrued and unpaid as of the Petition Date.

5.      The Debtors are authorized to continue utilizing the P-Card and are authorized to pay any fees and expenses associated therewith, whether related to prepetition or postpetition time periods. The Debtors are further authorized to make any payments in respect of the Debtors' continued use of the P-Card, including, without limitation, those related to Prepetition Expenses, whether such payments are based upon prepetition or postpetition obligations, as necessary to continue the use of the P-Card.

6.      Without further order of this Court, WEX is authorized to: (a) charge, and the Debtors are authorized to pay or honor, both prepetition and postpetition service and other

fees, costs, charges and expenses to which WEX is entitled under the terms and in accordance

with that certain Enterprise Business Charge Card Agreement with the Debtors, and (b) WEX is

authorized, but not directed, to charge back returned items to the Debtors in the normal course of

business; and the automatic stay imposed by section 362 of the Bankruptcy Code is hereby

modified to the extent necessary to implement and effectuate the terms and provisions of this

Order and to enable WEX to charge the Debtors' account(s) for payment and/or reimbursement

of charges attributable to the P-Card at such times and in such amounts as shall be determined by

WEX in its discretion and as otherwise provided under the underlying agreements governing the

Debtors' use of the P-Card.

7.      The Debtors are authorized to pay the Supplemental Workforce

Obligations in the ordinary course of business.

8.      The Debtors are authorized to continue the General Severance Program in

an aggregate amount not to exceed that provided for in any debtor in possession financing, cash

collateral or other budget.

9.      Nothing in this Interim Order is authorizing or approving any payment in

violation of section 503(c) of the Bankruptcy Code.

10.     Notwithstanding any other provision of this Interim Order, pending entry

of a final order, nothing in this Order shall authorize the Debtors to make any payment to or on

behalf of any employee on account of wages and other compensation obligations in excess of the

statutory caps set forth in section 507(a)(4) and (5) of the Bankruptcy Code.

11.     The Banks are authorized, when requested by the Debtors, to receive,

process, honor and pay all checks presented for payment of, and to honor all funds transfer

requests made by the Debtors related to Prepetition Compensation, Prepetition Expenses,

Prepetition Benefits, Prepetition Deductions, Prepetition Processing Costs and payments, if any, under the General Severance Program, whether such checks were presented or funds transfer requests were submitted prior to or after the Petition Date, provided that funds are available in the Debtors' accounts to cover such checks and funds transfers.  The Banks are authorized to rely on the Debtors' designation of any particular check or funds transfer as approved by this Order.

12. Any Bank that honors a prepetition check or other item drawn on any account that is the subject of this Order either: (a) at the direction of the Debtors, (b) in a good-faith belief that the Court has authorized such prepetition check or item to be honored, or (c) as a result of an innocent mistake made despite the above-described protective measures, shall not be liable to the Debtors or their estates on account of such prepetition check or other item being honored postpetition.

13. Nothing in the Motion or this Order, nor the Debtors' payment of claims pursuant to this Order, shall be deemed or construed as:  (a) an admission as to the validity of any claim against the Debtors; (b) a waiver of the Debtors' rights to dispute any claim on any grounds; (c) a promise to pay any claim; (d) an implication or admission that any particular claim against the Debtors would constitute a Supplemental Workforce Obligation or a claim for Prepetition Compensation, Prepetition Expenses, Prepetition Benefits, Prepetition Deductions, or Prepetition Processing Costs; or (e) the assumption of any contract.

14. Notwithstanding anything to the contrary contained herein, the relief granted in this Order and any payment to be made hereunder shall be subject to the terms of any orders authorizing debtor in possession financing and/or granting the use of cash collateral approved by this Court in these chapter 11 cases (including with respect to any budgets governing or relating to such use), and to the extent there is any inconsistency between the terms

of such financing and/or cash collateral orders and any action taken or proposed to be taken hereunder, the terms of such financing and/or cash collateral orders shall control.

15.     The requirements of Bankruptcy Rule 6003(b) have been satisfied with respect to the payments authorized by this Order.

16.     This Order shall be immediately effective and enforceable upon its entry. To the extent that it may be applicable, the fourteen-day stay imposed by Bankruptcy Rule 6004(h) is hereby waived.


Dated: _____, 2016
      Wilmington, Delaware

_____
UNITED STATES BANKRUPTCY JUDGE